**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Lindsay B. Melotek,** | |
| **Plaintiff,** | |
| **vs.** | |
| **Zionist Organization of America, David Kadosh, individually, and Sharona Whisler, individually.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

# <u>COMPLAINT</u>

NOW COMES Plaintiff, Lindsay B. Melotek, by and through her attorney, Lisa M. Stauff, complaining of Defendants, Zionist Organization of America, and David Kadosh and Sharona Whisler, individually, as follows:

### NATURE OF THE CASE

1. Plaintiff, Lindsay B. Melotek, was employed by Defendants as the Campus Coordinator for the Midwest Region from October 28, 2013 through March 4, 2014. Defendants refused to pay Ms. Melotek for hours worked, in violation of the Illinois Wage Payment and Collection Act, docked her salary for unlawful reasons in violation of the Fair Labor Standards Act, prevented Ms. Melotek from using employee disability plan benefits in violation of the Employee Retirement Income Security Act, §510, and constructively discharged Ms. Melotek in violation of the Americans With Disabilities Act.

## THE PARTIES

2.  Plaintiff, Lindsay Melotek, was employed by Defendants in Chicago, Illinois, at all times relevant to this Complaint.

3.  Defendant, Zionist Organization of America ("ZOA"), is a non-profit organization incorporated in New York, doing business in Illinois.

4.  Defendant David Kadosh was Defendant Zionist Organization of America's Associate Director of Campus Programs, and in this capacity controlled the wage payments of individuals, including Plaintiff, employed in Illinois, at all times relevant to this complaint.

5.  Defendant Sharona Whisler was Defendant Zionist Organization of America's Managing Director of the Campus Department, and in this capacity controlled the wage payments of individuals, including Plaintiff, employed in Illinois, at all times relevant to this complaint.

## JURISDICTION AND VENUE

6.  Jurisdiction is proper under 28 U.S.C.S. §1331 because Plaintiff alleges a dispute under the laws of the United States, and under 28 U.S.C.S §1367(a) because Plaintiff's Illinois claims are so related to the federal claims as to form the same controversy.

7.  Venue is proper pursuant to 28 U.S.C.S. §1391(b)(2) because all unlawful employment practices alleged herein took place in or about Chicago, Illinois.

## PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS

8.  Defendant Zionist Organization of America ("ZOA") hired Lindsay Melotek on October 17, 2013, as the full-time Campus Coordinator of the Midwest Region, for a salary of $32,000.00.

9.  Ms. Melotek reported to David Kadosh, Associate Director of Campus Programs, and Sharona Whisler, Managing Director of the Campus Department.

10. The mission of the ZOA's Campus Department was to grow the ZOA's Campus Activism Network, which "brings student activists to Israel for leadership training programs," and "prepar[es] the Jewish activist leadership of the future."

11. To that end, Ms. Melotek's job responsibilities included: forming connections with pro-Israel college students and student groups on college campuses; plan campus programs to relay ZOA's message and give pro-Israel students a voice on campus; create and develop effective programs to promote ZOA on college campuses; and help plan ZOA national events.

12. Ms. Melotek's territory for her job responsibilities included college and university campuses in Illinois, Indiana, Iowa, Michigan, Wisconsin, Kentucky, Missouri, Kansas, Ohio, and Minnesota. For this reason, Ms. Melotek's position was based in Chicago, Illinois, while ZOA was headquartered in New York.

13. Immediately upon her first day of work, on October 28, 2013, Ms. Melotek began developing networks to campus groups to promote ZOA's mission.

14. In early February 2014, Ms. Melotek travelled to Canada for the funeral for a family member. While in Canada, Ms. Melotek had a flare up of recurring health problems, for which she discovered that she needed surgery.

15. More specifically, Ms. Melotek's physician was concerned that Ms. Melotek had a cancerous growth in her throat. This would require additional time in Canada so that Ms. Melotek could have exploratory surgery through the Canadian healthcare system, which her dual citizenship permitted. If the surgery revealed a cancerous lesion, Ms. Melotek was going to require ongoing treatment.

16. Ms. Melotek asked Sharona Whisler if she could work from Canada, and Ms. Whisler said no. But Ms. Melotek continued to complete work assignments and outreach efforts while in Canada.

17. Ms. Melotek worked by phone and email, with Defendants' full knowledge and participation, as is demonstrated by ongoing emails and text messages between Ms. Melotek and Defendants.

18. Ms. Melotek participated in a work conference call on or about February 11, 2014, and in this call took on additional tasks for her team.

19. When Ms. Melotek asked if she was going to be paid for this work, Defendant Sharona Whisler said that Ms. Melotek would need to "restore [Mr. Kadosh's and Ms. Whisler's] trust in [Ms. Melotek's] ability to do the job" before she would receive her salary again.

20. Ms. Melotek continued to work because she was terrified of losing her job.

21. Ms. Melotek repeatedly asked Ms. Whisler to get paid for work done during her so-called unpaid leave, but was told that she would get paid when she returned to working in Illinois.

22. Ms. Melotek was coerced by Defendants into believing that if she did everything possible to make Defendants happy, she would get paid for her work and she would get to keep her job.

23. At no time was Ms. Melotek told that ZOA had a disability benefits plan, of which she could have availed herself if she needed to be out of work for medical reasons.

24. On or about February 24, 2014, Ms. Melotek was constructively discharged by Mr. Kadosh because she would not reschedule her surgery for spring or summer vacation, i.e., when college campuses were closed. Ms. Melotek's last day of work was March 4, 2014.

25. Telephone, email, and text records show that Ms. Melotek worked full- or nearly full-time from February 10 through March 4, 2014.

26. To date, Ms. Melotek has not been paid for wages and benefits accrued during those dates.

27. Defendants benefitted from Ms. Melotek's productivity and work product.

4

28. All of the job duties performed from February 5, 2014 through March 4, 2014 were the same or nearly identical to the job duties performed by Ms. Melotek prior, and for which she had been paid her normal wage without question.

29. Ms. Melotek applied for and took the job at ZOA because the position paid money and she needed income to support herself.

30. Defendants did not hire someone to perform Ms. Melotek's job duties until well after March 4, 2014.

31. Ms. Melotek was not informed while she worked at ZOA that ZOA participated in an employee disability benefits plan, for which Ms. Melotek could have received benefits if she needed to be absent from work for medical leave.

32. Defendants had full knowledge that Ms. Melotek was covered by this benefits plan.

33. Defendants also had full knowledge that Ms. Melotek should have been paid for time worked between February 5, 2014 and March 4, 2014.

34. Defendants terminated Ms. Melotek's participation in the employee disability benefits plan effective February 4, 2014.

35. Defendants terminated Ms. Melotek's participation in the employee life insurance plan as of her date of constructive discharge, i.e., February 24, 2014.

36. Ms. Melotek's actual last day of work was March 4, 2014.

37. As a result of her termination, Ms. Melotek suffered a loss of income and benefits, and suffered extreme stress, embarrassment and continued financial duress.

**COUNT I: Fair Labor Standards Act Violations, Against Defendant ZOA**

38. Plaintiff realleges and incorporates paragraphs 1 through 37 stated herein.

39. Plaintiff was hired as an employee exempt from overtime pay pursuant to 29 U.S.C. §213(a)(1).

40. Defendants docked Plaintiff's salary because Plaintiff was ill and Defendants stated that Plaintiff needed to re-establish her value to Defendants before she would again receive her salary.

41. Defendants knew at the time they docked Plaintiff's salary that Plaintiff was performing the job tasks for which she was hired.

42. As a result of Defendants' impermissible deductions of Plaintiff's salary, Plaintiff is owed wages and overtime pay.

WHEREFORE, Plaintiff prays this Court enter a judgment in her favor, and further order Defendant ZOA to restore to Plaintiff:

    a. Overtime pay for all overtime hours worked from October 28, 2013 through March 4, 2015;

    b. Liquidated damages in an amount equal to all wages owed;

    c. All costs incurred as a result of bringing this action;

    d. Reasonable attorneys' fees; and

    e. Any other relief as this court deems fit.

**COUNT II: Illinois Wage Payment and Collection Act claim, Against Defendant ZOA**

43. Plaintiff realleges and incorporates paragraphs 1 through 37 stated herein.

44. Defendant ZOA hired Plaintiff for a set wage.

45. Plaintiff performed assigned tasks for Defendant ZOA and then refused to pay Plaintiff for her labor.

46. The tasks performed by Plaintiff were ordinary commercial activities which furthered Defendant ZOA's business operation

47. Defendant ZOA's refusal to pay Plaintiff's wages was a knowing and willful violation of the Illinois Wage Payment and Collection Act.

48. As a result of Defendant's unlawful actions, Plaintiff lost earned wages.

WHEREFORE, based upon the foregoing, Plaintiff prays for judgment in her favor and:

      a. All wages due and owing for services provided to Defendant ZOA;

      b. Statutory damages in the amount of 2% per month as described in 820 ILCS 115/14;

      c. All costs incurred as a result of bringing this action;

      d. Reasonable attorney's fees; and

      e. Any other relief as this court deems fit.

**COUNT III: Illinois Wage Payment and Collection Act claim, Against David Kadosh**

49. Plaintiff realleges and incorporates paragraphs 1 through 37 stated herein.

50. For all times relevant in this complaint, Defendant David Kadosh was the Associate Director of Campus Programs, and one of the people to whom Ms. Melotek reported for the entirety of her employment.

51. Mr. Kadosh was a key decision-maker in the decision to not pay Ms. Melotek the wages earned at the end of her employment.

52. The Illinois Wage Payment and Collection Act states:

> "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13

53. Per the above-referenced provision, Mr. Kadosh violated the Illinois Wage Payment and Collection Act when he decided that Ms. Melotek would not receive her earned wage.

54. As a result of Defendant's unlawful actions, Plaintiff lost earned wages.

WHEREFORE, based upon the foregoing, Plaintiff prays for judgment in her favor and for:

      a. All wages due and owing for services provided to Defendant ZOA;

      b. Statutory damages in the amount of 2% per month as described in 820 ILCS 115/14;

c.   All costs incurred as a result of bringing this action;

d.   Reasonable attorney's fees; and

e.   Any other relief as this court deems fit.

**COUNT IV: Illinois Wage Payment and Collection Act Claim, Against Sharona Whisler**

55.   Plaintiff realleges and incorporates paragraphs 1 through 37 stated herein.

56.   For all times relevant in this complaint, Defendant Sharona Whisler was the Managing Director of Campus Development, and one of the people to whom Ms. Melotek reported for the entirety of her employment.

57.   Ms. Whisler was a key decision-maker in the decision to not pay Ms. Melotek the wages earned at the end of her employment.

58.   The Illinois Wage Payment and Collection Act states:

> "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13

59.   Per the above-referenced provision, Ms. Whisler violated the Illinois Wage Payment and Collection Act when she decided that Ms. Melotek would not receive her earned wage.

60.   As a result of Defendant's unlawful actions, Plaintiff lost earned wages.

WHEREFORE, based upon the foregoing, Plaintiff prays for judgment in her favor and for:

a.   All wages due and owing for services provided to Defendant ZOA;

b.   Statutory damages in the amount of 2% per month as described in 820 ILCS 115/14;

c.   All costs incurred as a result of bringing this action;

d.   Reasonable attorney's fees; and

e.   Any other relief as this court deems fit.

**COUNT V: ERISA §510, Against Defendant ZOA**

61.   Plaintiff realleges and incorporates paragraphs 1 through 37 stated herein.

62. Throughout Ms. Melotek's employment, Defendants did not inform Ms. Melotek that she was enrolled in Defendant's employee disability plan.

63. The purpose of this plan was to provide short-term disability insurance to any employee who had to miss work due to an illness and/or temporary disability.

64. On or about February 4, 2014, Ms. Melotek informed Defendant that she needed extensive exploratory surgery because Ms. Melotek's physician was concerned that Ms. Melotek had a cancerous growth in her throat.

65. In addition to the actions taken by Defendant in response to this news as described above, Defendant cancelled Melotek's enrollment in the employee short-term disability plan effective February 4, 2014.

66. Defendant took this action to prevent Ms. Melotek from availing herself of an employee benefit which Ms. Melotek might use to cover her absence from work due to the diagnosis and/or treatment of cancer, if any such cancer was detected.

67. Then, Defendant constructively discharged Ms. Melotek so that Ms. Melotek would not be able to avail herself of Defendant ZOA's employee benefits plans.

68. At all times relevant to this complaint, Ms. Melotek was performing her job duties at or above her employer's reasonable expectations.

69. Defendant's action was an intentional violation of ERISA § 510, which forbids interference with any rights or benefits bestowed upon an employee under an employee benefit plan.

70. As a result of Defendants' actions, Ms. Melotek suffered lost wages and benefits, and suffered extreme stress and humiliation.

WHEREFORE, based upon the foregoing, Plaintiff prays for judgment in her favor, and:

      a. Reinstatement, or in the alternative, backpay and future pay for all wages lost;

b.  Compensatory damages for emotional distress and humiliation as a result of Defendant's violation of Plaintiff's rights;

c.  All costs associated with this action;

d.  Reasonable attorney's fees; and

e.  Any other such remedy as this court deems fit.

**COUNT IV: Discrimination in Violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.***

71.  Plaintiff restates and realleges paragraphs 1 through 37 herein.

72.  Ms. Melotek timely filed a Charge of Discrimination with the Illinois Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Illinois Human Rights Act and the Americans With Disabilities Act, respectively, for discrimination on the basis of disability. Charge of Discrimination, attached as Exhibit A.

73.  On September 27, 2016, the EEOC issued a Notice of Right to Sue, attached as Exhibit B.

74.  On or about February 4, 2014, Ms. Melotek told Defendants that she needed surgery because her doctor suspected cancer.

75.  Defendants immediate response to this news was: to cancel Ms. Melotek's enrollment in Defendant ZOA's employee disability insurance plan; to pressure Ms. Melotek to schedule the surgery and potential treatment for the summer, when it would be more convenient for Defendants; to refuse to pay Ms. Melotek for work performed while she was out sick; to constructively discharge Ms. Melotek when Ms. Melotek refused to delay her surgery and potential treatment.

76.  Defendants' actions were clearly intended to discriminate against Ms. Melotek for a perceived and/or pending disability, because Defendants did not want to be inconvenienced

10

by an employee who had a health condition that caused an impairment in any major life activities for an extended period of time.

77. At all times relevant to this Complaint, Defendant ZOA had more than 15 employees.

78. At all times relevant to this Complaint, Ms. Melotek performed her job duties at or above her employer's reasonable expectations.

79. But for Ms. Melotek's need for surgery and/or potential treatment for cancer, Defendants would not have constructively discharged Ms. Melotek.

80. Defendants did not constructively discharge employees who were not disabled and/or potentially disabled.

81. As result of Defendants' actions, Ms. Melotek suffered lost wages and benefits, and suffered extreme stress, humiliation, and emotional distress.

WHEREFORE, based upon the foregoing, Plaintiff prays for judgment in her favor against Defendant ZOA for discrimination in violation of the Americans With Disabilities Act, and:

a. Grant her such relief as is appropriate under the provisions of the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.*

b. Issue an injunction to permanently restrain and enjoin defendant and its agents, employees, and administrators from discriminating against Plaintiff and any other employee who is disabled;

c. Make her whole for the damages and financial losses suffered, including punitive and compensatory damages;

d. Award all costs and attorney's fees incurred in the bringing of this action; and

e. Award any other relief as is fair and equitable.

Respectfully submitted,
Plaintiff,
Lindsay Melotek,

By:_____

Attorney for Plaintiff

Lisa M. Stauff
Law Offices of Lisa M. Stauff
53 W. Jackson Blvd., Suite 624
Chicago, Illinois 60604
(312) 212-1036